UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

June 15, 2015

James H. Waibel
19 Sumpter Lane
Elkton, Maryland 21921

Aparna V. Srinivasan
Social Security Administration
6401 Security Boulevard Room 617
Baltimore, MD 21235

RE: *James H. Waibel v. Commissioner, Social Security Administration*;
Civil No. SAG-14-1465

Dear Mr. Waibel and Counsel:

On May 1, 2014, Plaintiff James H. Waibel petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the Commissioner's Motion for Summary Judgment. (ECF No. 23). Mr. Waibel, who appears *pro se*, has not filed a response.[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Mr. Waibel filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 29, 2010. (Tr. 71-72). He alleged a disability onset date of October 6, 2006. (Tr. 33). His claims were denied initially and on reconsideration. (Tr. 91-97, 101-04). Mr. Waibel's claims were thereafter dismissed, and the Appeals Council ("AC") denied his request for review. (Tr. 75-82). On appeal before this Court, the Commissioner consented to remand for further development of the record so that Mr. Waibel's claims could be adjudicated on the merits. (Tr. 83). A hearing was then held on October 22, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 31-70). Following the hearing, the ALJ determined that Mr. Waibel was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 11-30). Mr. Waibel did not file exceptions to the ALJ's decision with

---

[1] A Rule 12/56 letter was sent to Mr. Waibel on May 19, 2015, advising him that he had the right to file a response to the Commissioner's motion within seventeen (17) days from the date of the letter.

*James H. Waibel v. Commissioner, Social Security Administration*
Civil No. SAG-14-1465
June 15, 2015
Page 2

the AC, and the AC did not otherwise assume jurisdiction, so the ALJ's decision constitutes the final, reviewable decision of the agency. 20 C.F.R. §§ 404.984, 416.1484. The AC then granted Mr. Waibel's request for additional time to file a civil action, which he commenced within the permissible period. (Tr. 1-2).

The ALJ found that Mr. Waibel suffered from the severe impairments of lumbar spine degenerative disc disease, left knee degenerative joint disease, depression, and anxiety. (Tr. 16). Despite these impairments, the ALJ determined that Mr. Waibel retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the ability to sit for about six hours in an eight-hour workday, and stand/walk for about two hours in an eight-hour workday, with a sit/stand option. The claimant could perform postural activities such as stooping, crouching and crawling occasionally, but should not climb any ladders, ropes, or scaffolds. The claimant could perform simple, unskilled work that is not at a production pace, meaning paid by the piece or on an assembly line. The claimant could perform work that is essentially isolated, with only occasional supervision. The claimant could perform low stress work, defined as only occasional changes in the work setting, or occasional need to make decisions or use judgment.

(Tr. 19). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Waibel could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 23-25).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ ruled in Mr. Waibel's favor at step one and determined that he has not engaged in substantial gainful activity since his alleged onset date. (Tr. 16); *see* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments that Mr. Waibel claimed prevented him from working. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). As noted above, the ALJ concluded that several of Mr. Waibel's impairments were severe. (Tr. 16). After finding at least one of Mr. Waibel's impairments severe, the ALJ continued with the sequential evaluation and considered, in assessing Mr. Waibel's RFC, the extent to which his impairments limited his ability to work. The ALJ's RFC analysis did not include additional evaluation of the impairments the ALJ deemed non-severe. However, the ALJ's step two discussion thoroughly explained why the ALJ determined that Mr. Waibel's non-severe impairments did not limit his ability to work;

*James H. Waibel v. Commissioner, Social Security Administration*
Civil No. SAG-14-1465
June 15, 2015
Page 3

accordingly, any error in the ALJ's RFC assessment with respect to those impairments was harmless. Moreover, I find no evidence that Mr. Waibel's non-severe impairments – gout and breathing problems – resulted in any functional limitations. Accordingly, I find no basis for remand.

At step three, the ALJ determined that Mr. Waibel's impairments did not meet the specific requirements of, or medically equal the criteria of, any listings. (Tr. 17-19). The ALJ considered the specific requirements of Listing 1.02, which pertains to major dysfunction of a joint, Listing 1.04, which pertains to disorders of the spine, Listing 12.04, which pertains to affective disorders, and Listing 12.06, which pertains to anxiety related disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02, 1.04, 12.04, 12.06. I have carefully reviewed the record, and I agree that no listings are met.

The ALJ then assessed Mr. Waibel's RFC, first summarizing his subjective complaints of the limitations resulting from his back and knee pain, as well as his depression and anxiety. (Tr. 20-21). The ALJ also reviewed the medical records, noting that Mr. Waibel received conservative treatment for his back pain and that there was no evidence indicating that his back pain was uncontrolled. (Tr. 21). The ALJ described Mr. Waibel's 2006 and 2007 knee surgeries, but noted that subsequent to the latter surgery, Mr. Waibel did not seek treatment for left knee pain until early 2010, when he rated his knee pain as 3/10. (Tr. 21-22). The ALJ determined that Mr. Waibel's current statements concerning the severity and frequency of his pain were not entirely credible, emphasizing the results of diagnostic testing and clinical examinations. (Tr. 22). With respect to Mr. Waibel's mental impairments, the ALJ emphasized that treatment notes often documented Mr. Waibel's concentration and memory as good, despite his allegations of memory problems. *Id.*

In assessing Mr. Waibel's RFC, the ALJ also considered the opinion evidence in the record, assigning "great weight" to the State agency medical consultants' opinions at exhibits 13F-15F. (Tr. 23) (citing (Tr. 491-516)). Notably, however, the ALJ did not assess the State agency medical consultants' opinions at exhibits 7F-9F and 12F. *See* (Tr. 407-32, 483-90). Those opinions, however, express limitations largely identical to the ALJ's RFC assessment, with one exception.[2] Exhibit 9F contains a Physical Residual Functional Capacity Assessment, in which Dr. Hopkins opined that Mr. Waibel can lift 10 pounds occasionally. (Tr. 426). Dr. Hopkins's opinion is not entirely consistent with the ALJ's determination that Mr. Waibel is

---

[2] Exhibit 8F contains a Psychiatric Review Technique in which Dr. Janssen opined that Mr. Waibel suffers from moderate difficulties in maintaining social functioning (Tr. 421), which is relevant to the ALJ's step three evaluation of whether Mr. Waibel satisfied the criteria of Listings 12.04 and 12.06. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. At step three, the ALJ determined that Mr. Waibel suffers from only mild difficulties in maintaining social functioning. (Tr. 18). The ALJ's failure to address Dr. Janssen's opinion concerning Mr. Waibel's difficulties in social functioning was harmless because the distinction between mild and moderate difficulties in social functioning has no meaningful impact on the outcome of the step three determination. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B)(2), 12.06(B)(2) (requiring, among other things, "marked difficulties in maintaining social functioning" to satisfy the listings). Indeed, Dr. Janssen opined that Mr. Waibel did not meet or equal any listings. (Tr. 411). Moreover, because the ALJ's ultimate RFC assessment accommodates Mr. Waibel's difficulties in social functioning, the ALJ's RFC assessment is not inconsistent with Dr. Janssen's opinion.

capable of the exertional requirements of light work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). Likewise, Dr. Hopkins's opinion is inconsistent with the opinion of Dr. Najar, the State agency consultant whose opinion the ALJ assigned great weight, that Mr. Waibel can lift 20 pounds occasionally. (Tr. 510). The ALJ's glowing but vague assessment of the State agency medical consultants' opinions does not provide an explanation which might support the differential treatment she accorded Dr. Najar's and Dr. Hopkins's opinions. *See* (Tr. 23). However, due to the ALJ's particularly thorough analysis at step five of the sequential evaluation, I am nevertheless able to conclude that the ALJ's error was harmless and that her decision is supported by substantial evidence.[3]

At step five of the sequential evaluation, the ALJ considered the impact of Mr. Waibel's age and level of education on his ability to adjust to new work. (Tr. 23-25). Relying on the Medical-Vocational Guidelines ("Grids"), 20 C.F.R. Part 404, Subpart P, Appendix. 2 § 202.21, the ALJ found that a younger individual, who is a high school graduate or more without transferrable skills, with a light RFC, is not disabled *per se*. (Tr. 24). Even if the ALJ had determined, consistent with Dr. Hopkins's opinion, that Mr. Waibel was limited to sedentary work, he would not have been disabled *per se*, pursuant to the Grids. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.28. Since Mr. Waibel's RFC assessment contained additional limitations which impeded his ability to perform all or substantially all of the requirements of light work, the ALJ asked the VE whether jobs existed in the national economy that were suited to Mr. Waibel's particular assessment.[4] (Tr. 66). The VE testified that a person with Mr. Waibel's RFC would be capable of performing the light jobs of pre-assembler for printed circuit boards and router, as well as the sedentary jobs of taper for printed circuit boards, order clerk (food and beverage), and final assembler (bench work). (Tr. 67). Based on the VE's testimony, the ALJ concluded that Mr. Waibel is capable of successfully adjusting to other work that exists in significant numbers in the national economy. (Tr. 24). Because the ALJ's ultimate determination actually relied on sedentary jobs that exist in significant numbers in the national economy, I find that the ALJ's failure to address Dr. Hopkins's opinion was harmless, and that the ALJ's determination was supported by substantial evidence.

For the reasons set forth herein, Defendant's Motion for Summary Judgment (ECF No. 23) is GRANTED. The Commissioner's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

---

[3] At step four of the sequential evaluation, the ALJ determined in Mr. Waibel's favor that, pursuant to her RFC assessment, Mr. Waibel was unable to perform his past relevant work as a safety inspector or carpet installer. (Tr. 23). Accordingly, the ALJ proceeded to step five.

[4] At the hearing, the ALJ acknowledged that, due to the amount of sitting required by Mr. Waibel's RFC assessment, his exertional level actually adheres more closely to the definition of sedentary work than light work. (Tr. 66-67). However, the VE testified that there were a few positions that a person with Mr. Waibel's RFC assessment could perform that are classified as light due to their lifting requirements. (Tr. 67).

*James H. Waibel v. Commissioner, Social Security Administration*
Civil No. SAG-14-1465
June 15, 2015
Page 5

    Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                      Sincerely yours,

                          /s/

                      Stephanie A. Gallagher
                      United States Magistrate Judge